UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY BARTRAM CORNS,

        Plaintiff,

v.                                             Case No.  8:20-cv-2605-VMC-SPF

COMMISSIONER OF SOCIAL
SECURITY,
        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

**I.**

    **A.**    **Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 161-167).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 63-74, 75-85).  Plaintiff then requested an administrative hearing (Tr. 99-100).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 22-62).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 10-17).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied

(Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1958, claimed disability beginning August 24, 2013 (Tr. 64-65).[1] Plaintiff graduated from high school and served in the military from January 1976 through May 1978 (Tr. 30, 161). Plaintiff's past relevant work experience included work as a delivery driver from 2004-2009 (Tr. 30-31; 176). Plaintiff alleged disability due to a major mood disorder, depression, a left leg injury, emphysema, high blood pressure, and a blocked carotid artery (Tr. 65).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2014 and had not engaged in substantial gainful activity from the alleged onset date of August 24, 2013 through his date last insured, December 31, 2014 (Tr. 13). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following medically determinable impairments: left leg injury, emphysema, hypertension, carotid artery stenosis, cholesteatoma, insomnia, acute right shoulder sprain, anxiety disorder, and substance abuse disorder (*Id.*). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the ALJ concluded Plaintiff did not have a severe impairment or

---

[1] Originally Plaintiff alleged a disability onset date of June 15, 2008, but the ALJ granted his request to amend the onset date at the administrative hearing (Tr. 10, 161).

combination of impairments (*Id.*).  Because Plaintiff had medically determinable mental impairments, the ALJ considered the four broad functional areas, set forth "paragraph B" of 12.00C.  The ALJ concluded Plaintiff had no more than mild limitations in any functional area and the evidence does not otherwise indicate more than a minimal limitation in Plaintiff's ability to do basic work activities; thus, the ALJ found Plaintiff's mental impairments non-severe (Tr. 16).  The ALJ opined that Plaintiff's physical and mental impairments, considered singly and in combination, do not significantly limit his ability to perform basic work activities.  Finding Plaintiff does not have a severe impairment or combination of impairments, the ALJ ended her inquiry at step two.  As a result, the ALJ determined Plaintiff was not disabled through December 31, 2014, the last date insured (Tr. 17).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a

"sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.

*Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

Plaintiff argues: (1) the ALJ erred at step two of the sequential analysis; (2) the ALJ did not properly consider the opinions of Drs. Knierim and Amiri; and (3) the ALJ lacked authority to hear and decide Plaintiff's disability determination (Doc. 22).

#### A. Step Two

In this case, the ALJ ended her inquiry at step two, finding Plaintiff "did not have a severe impairment or combination of impairments" (Tr. 13).[2] Per the applicable regulation, a severe impairment must bring about at least more than a minimal reduction

---

[2] If an ALJ finds that a claimant is disabled at any point in the five-step sequential evaluation process, the inquiry stops, and the claim is not reviewed any further. 20 C.F.R. § 404.1520(a)(4).

5

in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. § 404.1505(a). In the Eleventh Circuit, "[a]n impairment is not severe [at step two] only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).[3] This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

Here, Plaintiff argues that the ALJ erred at step two by failing to find his spinal impairment severe. Specifically, Plaintiff claims the ALJ erred by failing to consider certain medical evidence pre-dating his alleged onset date: a 2005 visit with Dr. Lorenzo who diagnosed "[c]hronic back pain with prominent muscle spasm currently on fentanyl/tramadol/naproxen;" lumbosacral spine x-rays from 2007 that revealed moderate spondylolisthesis of L5 to S1 associated with mild degenerative disc disease and

---

[3] As the ALJ noted in her decision, the Regulations provide six examples of "basic work activities": "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and usual work situations; and (6) Dealing with changes in a routine work setting."(Tr. 13); 20 C.F.R. § 404.1522.

moderate atherosclerotic changes of the distal abdominal aorta; and a 2008 VA Compensation and Pension Examination ("C&P exam") (Doc. 22 at p. 12 citing Tr. 1320-1327, 1838-1839)).

"Courts within the Eleventh Circuit have found pre-onset date evidence significant so long as such evidence is: 1) within close proximity to the onset date; and 2) relevant to a claimant's impairments" *Garrett v. Comm'r of Soc. Sec.*, 6:16-cv-1516, 2017 WL 1460733, at *3 (M.D. Fla. Mar. 15, 2017), *report and recommendation adopted*, 2017 WL 1438321 (Apr. 24, 2017). The evidence Plaintiff points to is not within close proximity to Plaintiff's August 24, 2013 onset date. Moreover, the records are not particularly relevant since these records contain no medical opinions setting forth functional limitations. *See Potter v. Colvin*, No. 8:12-cv-1031-T-17TGW, 2013 WL 1347282, at * (M.D. Fla. 2013) (ALJ's failure to evaluate medical evidence that significantly predated relevant period was "understandable, and reasonable"). Under the SSA's regulatory framework, functional limitations determine disability. *Id.* (citing *Wind v. Barnhart*, 133 Fed App'x 684, 690 (11th Cir. 2005) ("a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient; instead, the claimant must show the effect of the impairment on his ability to work"). For the reasons set forth more fully below, the undersigned finds that the ALJ did not err at step two.

      1. Eastmond's C&P Exam

Plaintiff's assertion that the ALJ erred in by failing to consider nurse practitioner Eastmond's Compensation and Pension examination of Plaintiff's spine on March 11,

2008 (Tr. 1320-1327) implicates two SSA regulations.[4] First, under 20 C.F.R. § 404.1504, the VA's assessment of whether an individual is entitled to VA benefits "is not binding on [the SSA]" and the SSA "will not provide any analysis in our determination or decision about a decision made by the [VA] … about whether you are disabled …, employable, or entitled to any benefits." *Id*. However, the SSA "will consider all of the supporting evidence underlying the [VA's] … decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4)." *Id*. Thus, the second SSA regulation implicated is the one outlining the types of medical evidence and defining a "medical opinion." The revised regulation, 20 C.F.R. § 404.1513(a)(2)(ii), defines a "medical opinion" as:

> a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: ...
> 
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> 
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> 
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> 
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

---

[4] In this case, the revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed his claim in July 2018 and alleged disability beginning August 24, 2013 (*see* Tr. 161).

8

§ 404.1513(a)(2). A "medical opinion" does not include "judgments about the nature and severity of [the claimant's] impairments, … medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

In arguing that the ALJ should have discussed the C&P examination, Plaintiff asserts that:

> On March 11, 2008, Mr. Corns presented to ARNP-BC Eastmond at the VA for a Compensation and Pension Examination for evaluation of a spinal impairment (Tr. 1320-1327). Mr. Corns reported complaints of mechanical lower back pain with sciatica and disc bulging (Tr. 1321). He reported he had been experiencing more pain and limitation of motion. Id. ARNP-BC Eastmond noted Mr. Corns was currently treated with Fentanyl patches for his pain with a fair response. Id. She further noted Mr. Corns used an orthotic insert and two crutches, but he was able to walk a quarter of a mile (Tr. 1322). Physical examination of Mr. Corns' thoracic sacrospinalis revealed bilateral guarding and pain with motion bilaterally (Tr. 1322). There was objective evidence of pain following repetitive motion testing (Tr. 1325). ARNP-BC Eastmond reviewed Mr. Corns' November 30, 2007 lumbosacral spine x-rays (Tr. 1325-1326). She noted Mr. Corns was currently employed as a part-time delivery driver, but he had lost four weeks of work over the prior twelve months due to his lower back pain (Tr. 1327). ARNP-BC Eastmond's diagnosis were mechanical lower back pain with sciatica and disc bulging. Id. She opined Mr. Corns' impairment caused "[s]ignificant [e]ffects" on his usual occupation due to his decreased mobility, problems with lifting and carrying, lack of stamina, weakness or fatigue, and pain. Id.

(Doc. 22 at 12).

Upon consideration, the matters Plaintiff identified as "opinions" do not fall within the amended regulations' definition of opinions. *See Maguire v. Saul,* No. 8:20-cv-710-T-TGW, 2021 WL 2284463, at *3-4 (M.D. Fla. June 4, 2021) (medical findings are not "medical opinions" because they do not necessarily provide perspectives about claimant's functional abilities and limitations); *Wood v. Comm'r of Soc. Sec.*, No. 6:20-cv-963-LRH,

9

2021 WL 2634325, at *5-6 (M.D. Fla. June 25, 2021) (ALJ did not err by failing to weigh "opinions" where "Claimant point[ed] to nothing in the medical evidence besides 'medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis' see 20 C.F.R. § 404.1513(a)(3), or Claimant's own subjective complaints, none of which constitute 'medical opinions'"); *Jason M. v. Comm'r of Soc. Sec.*, 2022 WL 2071096, at *5 (S.D. Ind. June 9, 2022) (VA disability examiner's findings that did not set forth work-related functional limitations and lacked discussion of what claimant could do despite his impairments was not a not a "medical opinion"); *Gerald v. Kijakazi*, 2021 WL 8014692, at *9–10 (D.S.C., 2021) ("An evaluation of an individual that does not include a work-related limitation or that lacks specificity regarding the limitations is not a medical opinion. As such, the court finds unpersuasive the plaintiff's assertion that the ALJ erred by only specifically addressing the 'opinion' in Dr. O'Kennon's examination of the plaintiff.")). The ALJ did not err at step two by failing to consider nurse practitioner Eastmond's March 11, 2008 C&P examination note.

    2. Dr. Lorenzo's 2005 exam and November 2007 x-rays

Similarly, the ALJ did not err by failing to discuss specifically Dr. Lorenzo's 2005 exam and radiological studies from 2007. This medical evidence is not "medical opinion" evidence. *See Maguire,* 2021 WL 2284463, at *3-4; *Wood,* 2021 WL 2634325, at *5-6. Moreover, the ALJ need not discuss each and every document. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (ALJ not required to refer to every piece of evidence in his decision). This evidence from 2005 and 2007 fails to shed light on Plaintiff's functional abilities during the relevant time period which did not begin until August 2013. Moreover,

10

as the Commissioner points out, Plaintiff engaged in work activity through early 2009, undermining his inability to work claim. *See* 20 C.F.R. § 404.1520(a)(4)(i), (b) ("if you are doing substantial gainful activity, we will find that you are not disabled."); 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); Tr. 176 (summary FICA earnings).

### B. Weight Assigned to Drs. Knierim and Amiri's Opinions

The new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources.[5] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors ...

---

[5] As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019).

are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). While the ALJ must explain how he or she considered the supportability and consistency factors,

the ALJ need not explain how he or she considered the other three factors.[6] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

Plaintiff asserts the ALJ erred when she considered the opinions of two state agency consultants, Drs. Knierim and Amiri. Specifically, Plaintiff maintains that when Drs. Knierim and Amiri considered his application, they did not have certain *pre-onset* date evidence before them that "likely would have impacted" their disability determinations. Plaintiff has not cited to any legal authority to buttress her assertion, and for the reasons set forth below, the Court finds it lacks merit.

State agency medical consultant Dr. Knierim reviewed Plaintiff's available records in August 2018 and found "insufficient evidence" to assess Plaintiff's functioning at the time of his date last insured (Tr. 65-67, 69-70). Likewise, on reconsideration in October 2018, Dr. Amiri, another state agency medical consultant, found "insufficient evidence" to assess Plaintiff's functioning at the time of his date last insured (Tr. 78-80, 81). Considering Drs. Knierim and Amiri "insufficient evidence" findings, the ALJ explained:

> Each of those doctors had the opportunity to review the claimant's evidence, to which each cited liberally in support of their claims, and each is well versed in the terminology and analytical framework employed in the disposition of

---

[6] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

> these claims. … These opinions, technically correct when given, were not contradicted by subsequent evidence. Although the nomenclature used is not proper at the hearing level, the "gist" of these opinions remain largely consistent with, and supported by, the overall evidence of record, and are at least partially persuasive.

(Tr. 16-17).[7] The ALJ discussed that the record evidence revealed Plaintiff abandoned all forms of treatment until the final week of his insured status:

> [Plaintiff] receiv[ed] the most conservative of treatment when he did return to treatment. Objective testing, long after the date last insured, disputes his diagnoses of carotid stenosis, and tempers, to considerable degree, his diagnosis of emphysema. Objective cardiac testing, again, long after the date last insured, offers no concerns for "end-organ" damage resulting from his hypertension, which would prove readily controlled with simple adherence to medications. The claimant required no hearing aids prior to date last insured, and sought no treatment for any psychological condition.

(Tr. 17 (internal citations omitted)).

This is not a situation where a gap in the evidence prejudiced the claimant. *See Highfield v. Saul*, 2020 WL 5706120, at * (S.D. Fla. 2020) (remanding with instructions to further develop record due to gaps in evidence that prejudiced plaintiff where state agency consultants had "insufficient evidence" to complete RFC and medical records from relevant time frame showed plaintiff diagnosed with PTSD). Nor is it a case where a consultative examination is needed to fully and fairly develop the record. *Id.* (finding ALJ should have gotten additional information from plaintiff's treating doctor regarding her limitations due to PTSD diagnosis and ordered a consultative exam). Plaintiff does not

---

[7] At the administrative hearing, Plaintiff's representative advised the ALJ that the state agency medical consultants were missing Exhibit 9F that Plaintiff's representative described as containing treatment notes for depression and anxiety as well as Plaintiff's VA Compensation and Pension Examination. *See* Tr. 27.

14

insist that it is. Instead, Plaintiff simply posits that Drs. Knierim and Amiri's opinions "likely would have [been] impacted" had they considered his *pre-onset* date 2002 lumbar spine x-ray, 2003 cervical spine x-ray, and 2003 MRI (all submitted to the SSA after the state agency consultants issued their administrative findings) (Doc 72 at 20; Tr. 70).

As the Commissioner responds, even assuming these diagnostic studies revealed limitations of functioning at the time they were done, the studies shed no light on Plaintiff's functioning during the relevant time period, beginning August 24, 2013. Again, the Commissioner cites to Plaintiff's work activity through early 2009 (after these radiological studies) and Plaintiff's failure to seek medical care related to his back between May 2008 and November 2017. *See* Tr. 176 (summary FICA earnings). While Plaintiff's contention that the state agency consultants did not have the benefit of reviewing *all* of the *pre-onset* date medical evidence is true, both Drs. Knierim and Amiri state in their medical determinations that the medical evidence fails to establish disability as of December 31, 2014 due to insufficient medical evidence (Tr. 73, 81). It is the ALJ, and not the medical sources, vested with the responsibility of reviewing *all* evidence and reaching a disability determination. 29 C.F.R. § 404.1520 ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."). Adhering to this standard, the ALJ considered Drs. Knierim and Amiri's findings and concluded they were "partially persuasive" as they were "correct when given [and] were not contradicted by subsequent evidence" (Tr. 16-17). Accordingly, the undersigned recommends that the Commissioner's decision be affirmed as the ALJ has supported her disability determination with substantial evidence. *Bloodsworth,* 703 F.2d at 1239 (the Court will

15

"not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ).

### C. ALJ's lawful authority

Lastly, Plaintiff asserts a constitutional challenge to the Commissioner's authority based on the Supreme Court case *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183, 2197 (2020), and argues that the statutory limitations in 42 U.S.C. § 902(a)(3) regarding the removal of the Social Security Commissioner violate the Separation of Powers Clause of the United States Constitution (Doc. 22 at 32-36).  In *Seila Law*, the Supreme Court found that the CFPB, an agency under the auspices of the Executive Branch, was headed by a single individual whom the President could remove only for cause and that this limit on the President's removal powers violated the Constitution's Separation of Powers Clause.  140 S.Ct. at 2191.  Relevant here, the Commissioner of Social Security, under 42 U.S.C. § 902(a)(3), is removable only for cause.  Relying on *Seila Law*, Plaintiff argues the statute is unconstitutional, and "the government deprived this claimant of a valid administrative adjudicatory process." (Doc. 22 at 33-34).

The Commissioner agrees that, to the extent 42 U.S.C. § 902(a)(3) is construed as limiting the President's authority to remove the Commissioner without cause, the removal provision is unconstitutional (*Id*. at 36, citing Office of Legal Counsel, U.S. Dep't of Justice, *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Protection*, 2021 WL 2981542 (July 8, 2021)).  But, relying on *Collins v. Yellen*, 141 S.Ct. 1761 (2021), the Commissioner contends that even where an unconstitutional statutory removal restriction exists, a

16

plaintiff seeking relief on that basis must show that the removal caused him or her harm, a showing Plaintiff cannot make (*Id*. at 36-37).

Courts within the Eleventh Circuit have repeatedly held that the separation-of-powers argument is meritless in this context. *Herring v. Comm'r of Soc. Sec.*, No. 2:21-cv-322-MRM, 2022 WL 2128801 (M.D. Fla. June 14, 2022); *Vickery v. Comm'r of Soc. Sec.*, No. 5:21-cv-122-PRL, 2022 WL 252 464 (M.D. Fla. Jan. 27, 2022); *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, No. 2:20-cv-872-SPC-MRM, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022); *Perez-Kocher v. Comm'r of Soc. Sec.*, 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *3-4 (M.D. Fla. Nov. 23, 2021), *report and recommendation adopted*, No. 6:20-cv-2357-GKS-EJK, 2022 WL 88160 (M.D. Fla. Jan. 7, 2022). Plaintiff's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner of Social Security Nancy Berryhill, an officer removable at will and not subject to 42 U.S.C. § 902(a)(3)'s tenure protection. In *Collins*, the Supreme Court addressed the removal of an Acting Director and found that "if the statute does not restrict the removal of an Acting Director, any harm resulting from actions taken under an Acting Director would not be attributable to a constitutional violation." 141 S.Ct. at 1781. Section 902(a)(3) restricts only the removal of the Commissioner and does not reference an acting Commissioner. It follows that Acting Commissioner Berryhill's appointment was constitutional. *Id*. at 1782.

Put differently, Acting Commissioner Berryhill was not subject to the unconstitutional removal provision on which Plaintiff bases his claim, and any ratification of an ALJ by Acting Commissioner Berryhill would make that appointment

constitutional. "[O]n July 16, 2018 the Acting Commissioner of Social Security [, Nancy Berryhill,] ratified the appointments [of the Social Security Administration's] ALJs and approved those appointments as her own." 84 Fed. Reg. 9583 (2019). So, here, the ALJ's appointment, as ratified, is valid. The ALJ issued her decision in Plaintiff's case on January 10, 2020, well after the ratification date of the ALJ. Consequently, 42 U.S.C. § 902(a)(3) – the unconstitutional removal provision – did not affect Plaintiff's case. Plaintiff's final argument fails.

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1. The Commissioner's decision be affirmed; and

2. The Clerk be directed to enter final judgment in the Commissioner's favor and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 30th day of June, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.